**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | | |
|---|---|---|
| In re: | : | Case No. 17-80750 |
| | : | |
| **UNIVERSAL LAND & LIVESTOCK, LLC,** | : | Judge Jeffrey J. Graham |
| | : | |
| | : | Chapter 11 |
| Debtor and Debtor-in-Possession. | : | |

**CREDITOR FIRST FINANCIAL BANK'S MOTION TO DISMISS CASE**

Now comes creditor First Financial Bank f/k/a First Financial Bank, National Association ("First Financial"), by and through counsel, and hereby moves this Court pursuant to 11 U.S.C. § 1112(b)(1) for the entry of an Order dismissing the above captioned bankruptcy case filed by Debtor and Debtor-in-Possession Universal Land & Livestock, LLC ("Debtor") for cause, including, but not limited to, the bad faith of Debtor in filing this case. This Motion is supported by the attached Memorandum and the Affidavit of Gregory Spradlin attached hereto as <u>Exhibit A</u>.

Respectfully submitted,

*/s/ J. Michael Debbeler*
J. Michael Debbeler
Jeffrey M. Hendricks
Branson D. Dunlop    (33655-15)
*Attorney for First Financial Bank*
GRAYDON HEAD & RITCHEY LLP
312 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Phone: (513) 629-2767
Fax:    (513) 651-3836
Email: mdebbeler@graydon.law
         jhendricks@graydon.law
         bdunlop@graydon.law

1

## MEMORANDUM

**I.   PROCEDURAL BACKGROUND**

First Financial files this Motion seeking dismissal of this case for cause under 11 U.S.C. § 1112(b)(1).  This case was commenced on November 9, 2017 (the "Petition Date"), when Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  This Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Court pursuant to the provision of 28 U.S.C. § 1409.  This is a core proceeding under 28 U.S.C. § 157(b) and this Motion is made pursuant to 11 U.S.C. §1112 and Fed. R. Bankr. P. 1017 and 9013.

**II.   FACTUAL BACKGROUND**

Debtor filed this case after First Financial was awarded a judgment and decree of foreclosure against the Debtor in the Vigo County, Indiana Superior Court ("State Court"), and immediately prior to the State Court granting the court-appointed receiver approval to sell the remainder of the Debtor's property to satisfy such judgment.

As of the Petition Date, Debtor was obligated to First Financial by virtue of the following (collectively, with all amendments and modifications thereof, the "Notes"): (i) Term Note dated July 9, 2015 in the amount of $7,500,000 ("Term Note")[1]; (ii) Non-Revolving Credit Note (Livestock Note) dated July 9, 2015 in the amount of $3,000,000 ("Livestock Note")[2]; (iii) Non-Revolving Credit Note (Equipment Note) dated July 9, 2015 in the amount of $200,000 ("Equipment Note")[3]; and (iv) Revolving Note dated April 19, 2016 in the amount of $250,000 ("Revolving Note")[4].

---

[1] Affid. ¶5.
[2] Affid. ¶6.
[3] Affid. ¶7.
[4] Affid. ¶8.

2

The Notes are secured by four duly recorded Open-End Mortgage and Security Agreements (collectively, the "Mortgages") covering certain real property owned by Debtor situated in the Vigo and Vermillion County, Indiana (the "Indiana Real Property") and Edgar County, Illinois (the "Illinois Real Property", and collectively with the Indiana Real Property, the "Real Property").[5] The Notes are further secured by a properly perfected security interest in all of Debtor's business assets (collectively, the "Collateral") pursuant to a Security Agreement ("Security Agreement") executed by Debtor in favor of First Financial.[6] The Collateral includes, but is not limited to, all livestock, born and unborn, and the proceeds and products thereof (collectively, "Livestock").[7] The Real Property and Collateral are collectively referred to herein as the "Property".

The Notes, Mortgages and Security Agreement (collectively, the "Loan Documents") are in default as a result of, among other things, the failure of Debtor to make payments on the Notes as required by their terms.[8] Due to said default, First Financial filed a Complaint on Notes, Guaranties, Foreclosure and Other Relief against Debtor and other related entities on March 22, 2017 in the Vigo County, Indiana Superior Court, Cause No. 84D04-1703-MF-2336 (the "Foreclosure Action").[9]

On July 14, 2017, upon request by First Financial, the State Court entered an Order Appointing Receiver, effectively appointing David Kebrdle of Chikol Equities, Inc. (the "Receiver") as receiver of the Indiana Real Property and Collateral.[10] After his appointment, the Receiver took numerous steps to secure, preserve and liquidate the Debtor's Property. These

---

[5] Affid. ¶¶9-13.
[6] Affid. ¶¶14-15.
[7] Affid. ¶14.
[8] Affid. ¶16.
[9] Affid. ¶17.
[10] Affid. ¶18.

3

efforts resulted in, among other things, the Receiver entering into several purchase contracts with buyers to sell approximately 1,500 acres of the Real Property, which sales would have resulted in net proceeds in excess of $5,000,000.[11] These proposed sales were consented to by the Debtor and approved by the State Court on September 26, 2017.[12] The Receiver was able to close on some of the approved sales and distribute the proceeds received therefrom to First Financial, but the closings on two of the sales were ultimately stayed by the filing of this bankruptcy case.

In the midst of these efforts to sell the Debtor's Property, the State Court entered a final judgment in favor of First Financial on September 26, 2017 (the "Judgment"), awarding judgment for the sums due under the Notes, a decree of foreclosure with respect to the Indiana Real Property, and an award of possession of the Collateral under the Security Agreement (the "Judgment").[13]

On October 27, 2017, First Financial and the Receiver filed a second *Joint Motion to Grant Receiver Authority to Sell: (1) Real Property by Private Sale and Auction Sale; (2) Livestock by Public Stockyard Sale or Broker; and (3) Equipment, All Free and Clear of Liens and Encumbrances* (the "Sale Motion").[14] As detailed in the Sale Motion, the Receiver entered into contracts to sell an additional 446 acres of the Debtor's Real Property for an amount in excess of $1,200,000.[15] The Sale Motion also requested approval for the Receiver to engage an auctioneer to sell all of the remaining Real Property and Equipment, and to proceed with a liquidation of the Livestock by Public Stockyard Sale or by Broker.[16]

---

[11] Affid. ¶19.
[12] Affid. ¶20.
[13] Affid. ¶21.
[14] Affid. ¶22.
[15] Affid. ¶23.
[16] Affid. ¶23.

4

The sales proposed in the Sale Motion would have provided for the full and final liquidation of all of Debtor's Property and ultimately brought the Foreclosure Action to a close. However, immediately prior to the State Court's approval of the Sale Motion, the Debtor filed the Petition, effectively halting the lengthy efforts of the Receiver and First Financial to sell the remaining assets of the Debtor, and the Receiver's ability to close on the pending purchase contracts that were previously consented to by Debtor and approved by the Court.

As of the Petition Date, First Financial was owed on the Loan Documents and Judgment the total approximate sum of $10,218,645.99.[17]

For the reasons set forth below, First Financial moves this Court for the entry of an Order dismissing this case for cause, including, but not limited to, the Debtor's bad faith in filing this case. Debtor's Schedules and SOFA clearly show that this is a two-party dispute that does not belong in bankruptcy court. The Debtor does not own any unencumbered property, has no income and no real unsecured creditors, has no likelihood of reorganizing, and filed this case in bad faith after First Financial obtained a final judgment against Debtor and on the brink of the State Court's approval of the final sale and liquidation of the Debtor's Property. All of the circumstances evidence the Debtor's bad faith in filing this case, and this Court should dismiss the case as a result.

**II.     LAW AND ARGUMENT**

    **A.     Dismissal Standard Under 11 U.S.C. § 1112(b).**

11 U.S.C. § 1112(b) provides, in pertinent part, that:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause …

---

[17] Affid. ¶24.

5

If a party in interest establishes the existence of "cause," then the Court must—absent unusual circumstances—dismiss the case or convert it to a case under chapter 7, whichever is in the best interests of creditors and the estate.[18] Whether cause exists to dismiss a case under § 1112(b) is a question within the sound discretion of the bankruptcy court.[19]

It is well-settled in the Seventh Circuit that a debtor's bad faith constitutes "cause" for dismissal under §1112(b)(1).[20] In determining whether bad faith exists, there is no brightline test. Instead, dismissal under §1112(b) involves a "case-specific factual inquiry which focuses on the circumstances of each debtor."[21] The moving party bears the burden of proving by a preponderance of the evidence that cause exists for dismissal of a debtor's bankruptcy.[22] While no single test exists, bankruptcy courts in the Seventh Circuit have identified several factors, none of which is dispositive, that may be probative of a debtor's lack of good faith in filing a chapter 11 bankruptcy case[23]:

(1) The debtor has few or no unsecured creditors;

(2) There has been a previous bankruptcy petition by the debtor or a related entity;

(3) The pre-petition conduct of the debtor has been improper;

(4) The petition effectively allows the debtor to evade court orders;

(5) There are few debts to non-moving creditors;

(6) The petition was filed on the eve of foreclosure;

(7) The foreclosed property is the sole or major asset of the debtor;

(8) The debtor has no ongoing business or employees;

---

[18] 11 U.S.C. § 1112(b)(1).
[19] *In re Woodbrook Assocs.,* 19 F.3d 312, 316 (7th Cir. 1994).
[20] *In re Madison Hotel Assocs.,* 749 F.2d 410, 426 (7th Cir. 1984).
[21] *In re Creekside Senior Apartments, L.P.,* 489 B.R. 51, 60 (B.A.P. 6th Cir. 2013).
[22] *In re Woodbrook Assocs.,* 19 F.3d at 317.
[23] *See In re Grieshop,* 63 B.R. 657, 662-63 (N.D. Ind. 1986); and *In re Lake Mich. Beach Pottawattamie Resort LLC,* 547 B.R. 899, 905-06 (Bankr. N.D. Ill. 2016).

6

(9) There is no possibility of reorganization;

(10) The debtor's income is not sufficient to operate;

(11) There was no pressure from non-moving creditors;

(12) Reorganization essentially involves the resolution of a two-party dispute;

(13) A corporate debtor was formed and received title to its major assets immediately before the petition; and

(14) The debtor filed solely to create the automatic stay.

It is First Financial's position that Debtor's case does not belong in Bankruptcy Court, and, therefore, it seeks dismissal rather than conversion. This cases is essentially a two-party dispute, and Debtor does not have the means to effectuate a successful reorganization. As set forth below, the bad-faith factors weigh heavily in favor of dismissing this case for cause.

**B.  This Case Should be Dismissed For Cause Because Debtor Lacks a Good Faith Basis For This Bankruptcy To Remain Pending Under § 1112(b)(4).**

In applying the factors described above to the facts of this case, the Court should find that Debtor filed this case in bad faith, and should dismiss this case as a result. While no single factor is dispositive, the cumulative factors present in this case indicate that Debtor has no realistic hope to confirm a plan of reorganization, and is using this case solely to invoke the automatic stay and avoid the inevitable sale of its Property in the Foreclosure Action. Therefore, as set forth below, Debtor did not file this case in good faith and the Court should dismiss the case from the outset.

**1.  The Debtor Has Few or No Unsecured Creditors.**

Debtor lists only nine unsecured creditors with claims totaling $51,440.16. Of these nine unsecured creditors, only <u>two</u> are listed as having undisputed, liquidated claims, including: (i) James O. McDonald, Esq. for "legal services" in the amount of $50,000.00, and (ii) Sullivan

7

Petro for an "open account" in the amount of $1,440.16.[24] The other seven unsecured creditors consist of taxing authorities for "potential tax obligations" and others to whom the Debtor may have "potential liability".[25] At the 341 Meeting, Debtor testified that the majority of the seven disputed unsecured claims were added solely in an abundance of caution.[26] These are not the types of creditors whose claims need to be restructured in a Chapter 11 bankruptcy. Rather, this case is essentially a two-party dispute between First Financial and Debtor. Therefore, the existence of only two undisputed unsecured creditors in this case weighs heavily in favor of a finding that the Debtor lacked a good faith basis in filing this case.

### 2.    The Petition Was Filed On The Brink of a Foreclosure Sale.

As explained above, First Financial and the Receiver filed a Sale Motion in the Foreclosure Action which would have provided for the complete liquidation of all of Debtor's remaining Property.[27] Immediately before the State Court entered a decision on the Sale Motion, Debtor filed this case, effectively halting this final liquidation plan. At no time in the Foreclosure Action did the Debtor defend against or otherwise object to the Judgment entered in favor of First Financial. Instead, the Debtor waited to file this bankruptcy case until well after the Judgment was entered and significant time and expenses were incurred by First Financial and the Receiver to prepare the final liquidation of the Debtor's Property in the Foreclosure Action.

The filing of bankruptcy on the brink of a final sale and liquidation of Debtor's Property in the Foreclosure Action is the hallmark of a bad faith filing, and a strong indication that the bankruptcy was filed solely for purposes of delaying a sale in the Foreclosure Action rather than a good faith effort for Debtor to reorganize.

---

[24] Sched. E/F (Doc. 37).
[25] Sched. E/F (Doc. 37).
[26] First Financial has ordered a transcript of the 341 Meeting, and will provide copies to the Debtor upon receipt.
[27] Affid. ¶22.

8

### 3.  The Property Subject To The Foreclosure Action Is The Sole Asset Of The Debtor.

The entirety of Debtor's assets are essentially comprised of the Real Property and Collateral that are the subject of First Financial's Mortgages and Security Agreement, and part of the receivership property in the Foreclosure Action. Aside from the Property, the Debtor lists a single asset of nominal value—$639.21 in "checks received but not deposited."[28] The Debtor further testified at the 341 Meeting that the retainer paid to counsel in this case did not come from the assets of the Debtor.[29] The Debtor's lack of any real unencumbered assets clearly shows that this is nothing more than a two-party dispute that does not belong in Bankruptcy Court.

### 4.  The Debtor Has No Significant Ongoing Business and There is No Possibility of Reorganization.

Debtor lacks the income or ongoing business operations sufficient to reorganize. In order to put forth a confirmable plan, Debtor is required to put forth a "fair and equitable" plan under 11 U.S.C. §1129(b)(2), which includes paying creditors with secured claims "regular installment payments in cash ... of a total value, as of the effective date of the plan, equal to the allowed amount of the claim." 11 U.S.C. § 1129(a)(9)(C)(i).

Here, according to Debtor's Statement of Financial Affairs ("SOFA"), the Debtor has earned total income of only $1.00 in 2017.[30] In fact, Debtor's SOFA shows that, since January 2015, Debtor has earned total income of only $294,786.00.[31] According to Debtor's testimony at the 341 Meeting, this income was attributable to the following: (a) the $194,786 income in 2016 was from a single sale of cattle which, according to the Debtor, was undertaken at the insistence

---

[28] Sched. A/B ¶4 (Doc. 37).
[29] *See* Footnote 26, *supra*.
[30] SOFA ¶1 (Doc. 37).
[31] *Id.*

9

of First Financial, and (b) the $100,000 income in 2015 was solely from payments made by Mark and Jame Krieger in connection with their lease of a portion of Debtor's Real Property—payments which, according to Debtor, ceased in 2016.[32]

The Debtor has had a negative cash flow every year since it began in 2015. There is simply no income or prospect of regular income going forward to support any ongoing payments to First Financial on its $10+ Million secured claim in this case. Moreover, the Debtor itself testified that it likely has no intent or ability to reorganize in this case, but, rather, would likely be seeking to simply liquidate its assets.[33]

Finally, as a practical matter, Debtor has almost no possibility of reorganization because it cannot confirm a plan of reorganization without First Financial's consent. In order to confirm a plan, a debtor must acquire the approval of at least two-thirds in amount, and more than half in number, of the voting creditors with allowed claims.[34] Here, First Financial's secured claim predominates over the other creditors. Its claim constitutes more than 99% of the amount of all claims. In order to confirm a plan over First Financial's objection, Debtor would have to propose a plan that provides regular installment payments to First Financial so that First Financial's claim is not impaired. Debtor's financials establish that Debtor cannot make such payments.

Based on the foregoing, the Debtor clearly lacks any real possibility, or even intent, of reorganizing or otherwise continuing as a going concern. This lack of any real possibility of reorganization supports a finding that this case was filed in bad faith and solely for the purpose of invoking the automatic stay to stave off the impending sale of the Property in the Foreclosure Action.

---

[32] *See* Footnote 26, *supra*.
[33] *See* Footnote 26, *supra*.
[34] 11 U.S.C. § 1126(c).

## 5. The Debtor's Income Is Not Sufficient to Operate.

From January 1, 2017 through the Petition Date, the Debtor earned income of only $1.00.[35] The money needed to operate the Debtor's business is coming solely from the proceeds of the Debtor's Real Property that was sold in connection with the Foreclosure Action. Once that runs out, there will be no stream of income whatsoever for the Debtor to continue paying employees or feeding and caring for the Livestock and other Property subject to First Financial's security interest.

## 6. There Was No Pressure From Non-Moving Creditors.

The Debtor was receiving no pressure from non-moving creditors prior to filing this case. As explained in detail above, this is mainly due to the fact that First Financial is the only real creditor in this case.

## 7. Reorganization Essentially Involves The Resolution Of a Two-Party Dispute.

Debtor's filings and testimony in this case clearly show that this case is a two-party dispute that hinges entirely on the claims between First Financial and the Debtor. Other than county taxing authorities, First Financial is the sole secured creditor in this case, and has a security interest in essentially all of the Debtor's assets. Outside of two unsecured creditors with negligible debts, there are no real unsecured creditors in this case. 99% of the assets and debts in this case involve solely the Debtor and First Financial. Therefore, this case is, for all intents and purposes, a two-party dispute that does not belong in Bankruptcy Court.

## 8. The Debtor Filed Solely To Create The Automatic Stay.

This case was filed solely to create the automatic stay and delay the impending sale of the Debtor's Property in the Foreclosure Action. The Debtor does not own any unencumbered

---

[35] SOFA ¶1 (Doc. 37).

property, has no income and no real unsecured creditors, and has no likelihood or even intent of reorganizing. All of the factors discussed herein lead to the conclusion that this case was filed in bad faith and solely to create the automatic stay to stave off the impending sale of the Property in the Foreclosure Action.

        **C.     No Unusual Circumstances Exist in This Case.**

Because cause exists, Debtor carries the burden of demonstrating that this case falls within the "unusual circumstances" exception to 11 U.S.C. § 1112(b)(1)'s mandatory conversion or dismissal.[36] As set forth in 11 U.S.C. § 1112(b)(2), the "unusual circumstances" exception only applies if the debtor or any other party in interest establishes that:

    (A)    there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

    (B)    the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)--

        (i)    for which there exists a reasonable justification for the act or omission; and

        (ii)    that will be cured within a reasonable period of time fixed by the court.

None of these circumstances exist in this case. Debtor has not proposed a plan or given any indication that there is a "reasonable likelihood" of confirmation within a reasonable time period. Debtor has few creditors, and First Financial's claim overwhelmingly predominates over the other creditors' claims. The only possibility to confirm a plan is to either (1) make regular payments to First Financial while curing the arrearages due (which Debtor cannot do), or (2) acquire First Financial's vote to confirm the plan. As set forth in this Motion, First Financial is seeking dismissal of this bankruptcy case. Therefore, there is no possibility of confirming a

---

[36] *In re Dovetail, Inc.,* Bankr.N.D.Ill. No. 07-B-72820, 2008 Bankr. LEXIS 3866, at *8 (Dec. 31, 2008).

12

plan. Given that the bad-faith factors weigh heavily in favor of dismissal and there are no unusual circumstances present, the Court should dismiss the case.

### D.     Dismissal, Rather Than Conversion, Is In The Best Interests Of Creditors.

To determine if dismissal or conversion of a case is appropriate under 11 U.S.C. § 1112(b), courts weigh the impact of dismissal and conversion on the estate as a whole. By failing to meet the good faith requirement under 11 U.S.C. § 1112(b), First Financial submits that the Court should dismiss this case. The other creditors' claims are nominal, and all appear to be potential tax liabilities or other disputed claims included solely in an "abundance of caution." This is a two-party dispute that does not belong in Bankruptcy Court, and this Court should dismiss this case accordingly.

### IV.    CONCLUSION

For the foregoing reasons, First Financial respectfully requests the Court enter an order dismissing this bankruptcy case, and for such other and further relief that this Court deems just and proper.

                                  Respectfully submitted,

                                  */s/ J. Michael Debbeler*
                                  J. Michael Debbeler
                                  Jeffrey M. Hendricks
                                  Branson D. Dunlop    (33655-15)
                                  *Attorney for First Financial Bank*
                                  GRAYDON HEAD & RITCHEY LLP
                                  312 Walnut Street, Suite 1800
                                  Cincinnati, Ohio 45202
                                  Phone: (513) 629-2767
                                  Fax:    (513) 651-3836
                                  Email: mdebbeler@graydon.law
                                                 jhendricks@graydon.law
                                                 bdunlop@graydon.law

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| In re: | : | Case No. 17-80750 |
| | : | |
| UNIVERSAL LAND & LIVESTOCK, LLC, | : | Judge Jeffrey J. Graham |
| | : | |
| | : | Chapter 11 |
| Debtor and Debtor-in-Possession. | : | |

**AFFIDAVIT OF GREGORY SPRADLIN IN SUPPORT OF CREDITOR FIRST FINANCIAL BANK'S MOTION TO DISMISS CASE**

I, Gregory Spradlin ("Affiant"), being first duly cautioned and sworn, do depose and say that the following statement is based on my personal knowledge and is true and correct to the best of my belief:

1. I am over eighteen years of age and am competent to testify upon personal knowledge regarding this matter.

2. I am a First Vice President of First Financial Bank f/k/a First Financial Bank, National Association ("First Financial"). I am making this affidavit based on information that is within my personal knowledge or that I obtained from business records of First Financial in my custody and control which are maintained by First Financial as a regular practice in the course of its regularly conducted business activities.

3. In connection with making this affidavit, I personally examined First Financial's business records relating to the subject matter described herein.

4. Due to their voluminous nature, copies of the loan documents and state court filings described herein have not been attached to this Affidavit, but are available upon request.

5. First Financial is in possession of and entitled to enforce a Term Note dated July 9, 2015 executed by Universal Land & Livestock, LLC ("Universal") and made payable to First Financial in the principal amount of $7,500,000 (the "Term Note"). The Term Note was executed in connection with and governed by a Loan Agreement dated July 9, 2015 ("Loan Agreement").

6. First Financial is in possession of and entitled to enforce a Non-Revolving Credit Note (Livestock Note) dated July 9, 2015 executed by Universal and made payable to First Financial in the amount of $3,000,000.00 (together with all amendments thereto, the "Livestock Note"). The Livestock Note was amended by virtue of an Amendment to Promissory Note dated December 11, 2015 and an Amendment to Promissory Note dated February 8, 2016. The Livestock Note was executed in connection with and governed by the Loan Agreement.

7.  First Financial is in possession of and entitled to enforce a Non-Revolving Credit Note (Equipment Note) dated July 9, 2015 executed by Universal and made payable to First Financial in the amount of $200,000.00 (together with all amendments thereto, the "Equipment Note"). The Equipment Note was amended by virtue of an Amendment to Promissory Note dated December 11, 2015 and an Amendment to Promissory Note dated February 8, 2016. The Equipment Note was executed in connection with and governed by the Loan Agreement.

8.  First Financial is in possession of and entitled to enforce a Revolving Note dated April 19, 2016 executed by Universal and made payable to First Financial in the amount of $250,000.00 (the "Revolving Note"). The Revolving Note was executed in connection with and governed by an Amendment No. 1 to Loan Agreement dated April 19, 2016.

9.  As security for the sums due to First Financial under the Term Note, Livestock Note, Equipment Note and Revolving Note (collectively, the "Notes"), Universal executed and delivered to First Financial an Open-End Mortgage and Security Agreement (Indiana Property) dated July 9, 2015 and recorded with the Vigo County, Indiana Recorder on July 13, 2015 as Document numbered 2015007064 ("Mortgage I"). Mortgage I granted First Financial a security interest in certain real estate and improvements owned by Universal in Vigo County, Indiana, which is more particularly described in the legal description attached to Mortgage I ("Mortgaged Property I").

10. As further security for the sums due to First Financial under the Notes, Universal executed and delivered to First Financial an Open-End Mortgage and Security Agreement (Indiana Property) dated July 9, 2015 and recorded with the Vigo County, Indiana Recorder on July 13, 2015 as Document numbered 2015007065 ("Mortgage II"). Mortgage II granted First Financial a security interest in certain real estate and improvements owned by Universal in Vigo County, Indiana, which is more particularly described in the legal description attached to Mortgage II ("Mortgaged Property II").

11. As further security for the sums due to First Financial under the Notes, Universal executed and delivered to First Financial an Open-End Mortgage and Security Agreement (Indiana Property) dated July 9, 2015 and recorded with the Vermillion County, Indiana Recorder on August 6, 2015 as Document numbered 2015001419 and re-recorded on October 20, 2015 as Document numbered 2015001991 ("Mortgage III"). Mortgage III granted First Financial a security interest in certain real estate and improvements owned by Universal in Vermillion County, Indiana, which is more particularly described in the legal description attached to Mortgage III ("Mortgaged Property III").

12. Mortgaged Property I, Mortgaged Property II and Mortgaged Property III are collectively referred to herein as the "Indiana Real Property".

13. As further security for the sums due to First Financial under the Notes, Universal executed and delivered to First Financial an Open-End Mortgage, Security Agreement and Assignment of Leases and Rents dated July 9, 2015 and recorded with the Edgar County, Illinois Recorder on July 15, 2015 as Instrument No. 2015-00001351 ("Mortgage IV"). Mortgage IV granted First Financial a security interest in certain real estate and improvements owned by

Universal in Edgar County, Illinois, which is more particularly described in the legal description attached to Mortgage IV (the "Illinois Real Property").

14. As further security for the sums due to First Financial under the Notes, Universal executed and delivered to First Financial a Security Agreement dated July 9, 2015 ("Security Agreement"). By virtue of the Security Agreement, Universal pledged to First Financial the collateral described in the Security Agreement, which collateral includes, but is not limited to, all of Universal's equipment and livestock, born and unborn, and the proceeds and products thereof (collectively, the "Collateral").

15. First Financial's security interest in the Collateral is perfected by virtue of the following: (1) UCC Financing Statement filed for record with the Vigo County Recorder on July 13, 2015 as Document number 206146; (2) UCC Financing Statement filed for record with the Vermillion County Recorder on September 17, 2015 as Document number 15009 and re-recorded on October 20, 2015 as Document number 15011; (3) UCC Financing Statement filed for record with the Indiana Secretary of State on July 21, 2015 as Filing number 201500005649799; and (4) UCC Financing Statement filed for record with the Edgar County, Illinois Recorder on July 15, 2015 as Instrument No. 2015U-00000008.

16. The Notes, Mortgages and Security Agreement (collectively, the "Loan Documents") are in default as a result of, among other things, the failure of Debtor to make payments on the Notes as required by their terms.

17. Due to said default, First Financial filed a Complaint on Notes, Guaranties, Foreclosure and Other Relief against Debtor and other related entities on March 22, 2017 in the Vigo County, Indiana Superior Court, Cause No. 84D04-1703-MF-2336 (the "Foreclosure Action").

18. On July 14, 2017, upon request by First Financial, the State Court entered an Order Appointing Receiver, effectively appointing David Kebrdle of Chikol Equities, Inc. (the "Receiver") as receiver of the Indiana Real Property and the Collateral.

19. After his appointment, the Receiver took numerous steps to secure, preserve and liquidate the receivership property. These efforts resulted in, among other things, the Receiver entering into several purchase contracts with buyers to sell approximately 1,500 acres of the Indiana Real Property and Illinois Real Property (collectively, the "Real Property"), which sales would have resulted in net proceeds in excess of $5,000,000.

20. These proposed sales were consented to by the Debtor and approved by the State Court on September 26, 2017.

21. On September 26, 2017, the State Court entered a final judgment in favor of First Financial, awarding judgment for the sums due under the Notes, a decree of foreclosure with respect to the Indiana Real Property, and an award of possession of the Collateral under the Security Agreement (the "Judgment").

22. On October 27, 2017, First Financial and the Receiver filed a second *Joint Motion to Grant Receiver Authority to Sell: (1) Real Property by Private Sale and Auction Sale; (2)*

*Livestock by Public Stockyard Sale or Broker; and (3) Equipment, All Free and Clear of Liens and Encumbrances* (the "Sale Motion").

23. As detailed in the Sale Motion, the Receiver entered into contracts to sell an additional 446 acres of the Debtor's Real Property for an amount in excess of $1,200,000. The Sale Motion also requested approval for the Receiver to engage an auctioneer to sell all of the remaining Real Property and Collateral.

24. As of the Petition Date, Universal owed First Financial on the Loan Documents and Judgment the total approximate sum of $10,218,645.99.

AFFIANT FURTHER SAYETH NAUGHT.

_____
Gregory Spradlin

STATE OF __Ohio__         )
                          ) SS:
COUNTY OF __Hamilton__    )

Sworn to and acknowledged before me, a notary public, this 9th day of January, 2018 by Gregory Spradlin, a Vice President of First Financial Bank.

_____
Notary Public

MARGARET M. SCHMIDT
Notary Public, State of Ohio
My Commission Expires
November 16, 2020

8182913.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 10th, 2018 a copy of the foregoing *Creditor First Financial Bank's Motion to Dismiss Case* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

- John Joseph Allman - jallman@hbkfirm.com
- David R. Krebs - jallman@hbkfirm.com
- U.S. Trustee - ustpregion10.in.ecf@usdoj.gov
- Laura A. DuVall - Laura.Duvall@usdoj.gov
- Annette England- Annette.england@btlaw.com
- Scott Starr- starr@starrausten.com
- Mark Fryman- fryman@starrausten.com

I further certify that a copy of the foregoing *Creditor First Financial Bank's Motion to Dismiss Case* was mailed by first-class U.S. Mail on this 10th day of January, 2018, addressed to:

Universal Land & Livestock, LLC
P.O. Box 145
Universal, IN 47884
*Debtor*

                                                  */s/ J. Michael Debbeler*
                                                  J. Michael Debbeler

8209885.1